## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CHARLES GIBBONS**    )
1325 G Street N.W.,  Suite 500  )
Washington, DC 20005,   )
           )
       Plaintiff,  )
v.           )   Civil Action No. _____
           )
**DEPARTMENT OF JUSTICE**  )
950 Pennsylvania Avenue, N.W. )
Washington DC 20530,   )
           )
       Defendant. )
_____)

### Complaint for Injunctive Relief

1) This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

Plaintiff seeks injunctive and declaratory relief to compel defendant Department of Justice to

disclose requested records.

### Jurisdiction and Venue

2) This court has both subject matter jurisdiction over this action and personal

jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).  This court also has jurisdiction

over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201(a) & 2202.  Venue lies in

this district under 5 U.S.C. § 552(a)(4)(B).

### The Parties

3) Plaintiff Charles Gibbons is a citizen of the United States and a resident of the District

of Columbia.  Plaintiff, writing as Chip Gibbons, has published original works of journalism

with, *inter alia, Jacobin Magazine, The Intercept, In These Times, and The Nation.* He is

currently under contract with *Verso Books* to complete a political history and present-day

analysis of the FBI, domestic political surveillance, and the rise of the US national security state.

4) Defendant Department of Justice ("DOJ") is a Department of the Executive Branch of the United States Government. DOJ is an "agency" within the meaning of 5 U.S.C. § 552(f). The Federal Bureau of Investigation ("FBI") is a component of defendant DOJ.

## Background

5) In the late 1990s and early 2000s, large protests occurred during the meetings of international economic summits, including the World Trade Organization, World Bank, International Monetary Fund, and Summit of the Americas.

6) On May 16, 2001 then-FBI Director Louis Freeh gave testimony to the House Appropriations Subcommittee on the threat of terrorism. His written testimony contained a section on "Anarchists and extremist socialist groups," which claimed, "anarchists, operating individually and in groups, caused much of the damage during the 1999 World Trade Organization ministerial meeting in Seattle."

7) On February 6, 2002, Dale L. Watson, then the FBI's Executive Assistant Director, Counterterrorism/Counterintelligence Division gave testimony to the Senate Select Committee on Intelligence. His written testimony contains the same passage verbatim about "anarchists and extremists socialist groups."

8) The FBI's website currently features a page dated November 16, 2010 titled "Domestic Terrorism Anarchist Extremism: A Primer." The primer described "anarchist extremists" as being "event driven" and targeting "economic and financial summits." The primer states:

> ***For today's generation of American anarchist extremists, the rioting that disrupted the 1999 World Trade Organization meetings in Seattle is the standard by which they measure "success"****—it resulted in millions of dollars in property damage and economic loss and injuries to hundreds of law enforcement officers and bystanders. But fortunately, they haven't been able to duplicate what*

*happened in Seattle…which may be a combination of the improved preparations*
*of law enforcement as well as the disorganization of the movement.*

[emphasis in original].

### Plaintiff's FOIA Requests

9) Plaintiff submitted FOIA requests through the FBI's FOIA portal on February 22,

2021, requesting all FBI records created from 1998 to 2006 that mention or reference the 1999

Ministerial Meeting of the World Trade Organization in Seattle, Washington; Meetings of the

World Bank and International Monetary Fund in Washington, DC; and the  April 2001 Summit

of the Americas in Quebec, Canada.

10) Defendant acknowledged plaintiff's requests for records mentioning or referencing

the 1999 Ministerial Meeting of the World Trade Organization in Seattle, Washington in a

correspondence dated March 4, 2021 and assigned it FOIPA Request No.: 1490914-000.  In the

same correspondence, defendant stated that plaintiff's request for a fee waiver was under

consideration.  For the purpose of assessing fees, defendant correctly determined plaintiff was an

educational institution, noncommercial scientific institution or representative of the news media

requester.  To date defendant has not communicated to plaintiff a decision about plaintiff's

request for a fee waiver.

11) Defendant, in a correspondence dated March 31, 2021, informed plaintiff that

unusual circumstances applied to the processing of the request that would delay defendant's

ability to make a determination about the request.

12) Plaintiff requested via electronic mail on February 7, 2022 an estimated date of

completion.  Defendant responded via electronic mail on February 8, 2022 that "Your request is

being preprocessed to another open request on the same subject, meaning a request on the same

subject had been received and was already in process prior to receipt of your request.  To avoid

duplicative efforts, you will receive the same releases at the same time as the original requester for this subject.  The request to which yours will be preprocessed is presently awaiting assignment to a Disclosure analyst who will then review the records to determine if any redactions are required pursuant to subsections of Title 5, U. S. Code, Section 552 and 552a.  The estimated date of completion for this request is July 2024."

13) Plaintiff requested on September 26, 2022 an estimate of potentially responsive pages.  Defendant responded on September 27, 2022 that there were 3,298 potentially responsive pages.

14) Defendant responded to plaintiff's request for records created from 1998 to 2006 mentioning or referencing meetings of the World Bank and International Monetary Fund in Washington, DC, on March 4, 2021 and assigned it FOIPA Request No.: 1490916-000.  In the same correspondence, defendant correctly determined plaintiff was an educational institution, noncommercial scientific institution or representative of the news media requester.

15) Defendant, in a correspondence dated May 3, 2021, informed plaintiff that unusual circumstances applied to the processing of the request that would delay defendant's ability to make a determination about the request.

16) In a communication dated July 12, 2021, defendant denied plaintiff's request for a fee waiver on the grounds that he failed to demonstrate that the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government.

17) Plaintiff requested via electronic mail on February 7, 2022, an estimated date of completion.  Defendant responded via electronic mail on February 7, 2022 that "Your request is

currently in the complex request large processing track, and the estimated date of completion for your request is June 2026."

18) Plaintiff requested an estimated number of responsive pages on February 8, 2022. Defendant responded, "This request is currently in the large processing track of 951-8000 pages."

19) Plaintiff again requested an estimated number of responsive pages on September 27, 2022.  Defendant responded "until you request is reviewed by a FOIA analyst we are unable to provide a page count. At this time we know your request falls in the large track."

20) Defendant acknowledged plaintiff's request for records about the April 2001 Summit of the Americas in Quebec, Canada in a correspondence dated March 4, 2021 and assigned it FOIPA Request No.1490915-000.  In the same correspondence, defendant correctly determined plaintiff was an educational institution, noncommercial scientific institution or representative of the news media requester.

21) Defendant denied plaintiff's request for fee waiver on June 24, 2021 on the grounds that he failed to demonstrate that the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government.

22) Defendant contacted plaintiff via electronic mail on September 10, 2021 and informed him that they had located approximately 2,253 pages potentially responsive to his request.

23) To date, defendant has not made a determination whether it will or will not provide any of the requested records to plaintiff.

## CAUSE OF ACTION

### Violation of the Freedom of Information Act for
### Wrongful Withholding of Agency Records

24) Plaintiff repeats and realleges paragraphs 1-23.

25) Plaintiff has exhausted the applicable and available administrative remedies with respect to defendant's processing of plaintiff's FOIA request.

26)  Defendant has wrongfully withheld the requested records from plaintiff by failing to comply with the statutory time limit for rendering a determination or response to plaintiff's FOIA request.

27)  Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents.

### Requested Relief

WHEREFORE, plaintiff prays that this Court:

A.  order defendant DOJ and its component, FBI, to disclose the requested records in their entirety and make copies available to plaintiff;

B.  provide for expeditious proceedings in this action;

C.  award plaintiff his costs and reasonable attorneys fees incurred in this action; and

D.  grant such other relief as the Court may deem just and proper.

Respectfully submitted,

DAVID L. SOBEL, D.C. Bar No. 360418
5335 Wisconsin Avenue, N.W.

6

Suite 640
Washington, DC 20015
(202) 246-6180

*Counsel for Plaintiff*